Commonwealth *v.* Johnson, Appellant.

Argued June 20, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Fitzhugh Lee Styles,* for appellant.

*Domenick Vitullo,* Assistant District Attorney, with him *Victor H. Blanc,* District Attorney, for Commonwealth, appellee.

OPINION BY GUNTHER, J., September 16, 1960:

This appeal is from the conviction and sentence imposed upon appellant, Herman Johnson, charging him

with burglary and larceny at No. 173 February Sessions, 1959, in the City of Philadelphia. On December 17, 1959, we granted a new trial[1] for what we considered to be error on the charge of alibi. The Supreme Court[2] reversed and remanded the case back to us for disposition on the merits.

On January 24, 1959, at about 6:45 A.M., Kay's Sunoco Station located at 16th Street and Girard Avenue, City of Philadelphia, was burglarized. Entrance was obtained by breaking a window in the overhead garage door. Freddie Goldwire, an employe of the station and who was on his way to work, approached the station and saw the garage door up, and a Cadillac automobile, which had been left in the alley behind the garage the night before, was backed up to the door. Goldwire testified that he saw appellant, also an employee of the station, standing at the cash register putting money in his pocket. He spoke to the defendant and asked him what had happened. Defendant informed Goldwire that the station had been robbed. When Goldwire went to the telephone to call the owner, defendant pulled away in the Cadillac automobile which was recovered some three weeks later in a damaged condition.

The proprietor of the station corroborated Goldwire's testimony as to his custody of the Cadillac which had been left in the alley. He also testified as to the amount of money that was left in the cash register. He also testified that defendant saw him place $85.00 in the cash register the night before for the purpose of purchasing car parts the next morning. He stated that defendant was not due at work before eight o'clock in the morning and that he had no permission

---

[1] *Commonwealth v. Johnson*, 191 Pa. Superior Ct. 315, 156 A. 2d 605.

[2] *Commonwealth v. Johnson*, 399 Pa. 584, 161 A. 2d 46.

to enter the premises before that hour; that he had no key to the premises and that he had no permission to remove the automobile.

Defendant's defense was an alibi. He testified that inasmuch as he missed the bus to Atlantic City, he spent the night with friends of his family. He slept that night with one of the children of the Hall family and on the morning of the burglary did not get up until 7:10 A.M. He stated he left the Hall home about 7:40 A.M. and went directly to work where he learned of the burglary. He categorically denied any knowledge of it. He was corroborated in material details by Mrs. Hall who stated that at six o'clock in the morning she got up to cover her son who was sleeping with the defendant and that the defendant was still sleeping; that she was awake from six to seven o'clock listening to a radio program and that she got up at seven o'clock to fix breakfast. She testified that her husband awakened the defendant about ten minutes after seven and that defendant ate breakfast with them and departed for work about 7:40 A.M.

During the course of cross-examination of one of the Commonwealth's witnesses, certain testimony was developed regarding prior robberies suffered by the proprietor, indirectly indicating that the defendant might have had something to do with them. Also, defendant's prior parole status was elicited on cross-examination of the proprietor. The trial court gave no instructions to the jury concerning these matters, and defendant did not request such instructions. Only a general exception was taken to the charge. On this appeal, this is urged as fundamental error.

In determining whether the failure to withdraw a juror under such circumstances or the failure to admonish the jury with regard to such irrelevant and sometimes damaging testimony may be considered as

fundamental error requiring the reversal of a case otherwise properly tried has caused much concern and no unanimity of opinion. As stated by us in *Commonwealth v. Savor,* 180 Pa. Superior Ct. 469, 119 A. 2d 849 (affirmed in 386 Pa. 523, 126 A. 2d 444), this usually involves a consideration of the circumstances under which the irrelevant evidence was given and its probable effect on the jury. We adopted the following rules: " 'If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.' "

Upon the reading of the record in the instant case, one is left with the conclusion that the prejudicial statements, not corrected by the court below, were brought out and emphasized by defense counsel notwithstanding the admonition of the Commonwealth (R. 35a-36a):

"Q. Mr Kay, how long have you known this boy, Herman? A. Oh, about 8 or 9 years. Q. Outside of this particular incident, your relationship with him has been all right, hasn't it? A. (No response). Q. I am not talking about this incident, I am talking about your relationship with him during 8 or 9 years. A. Yes and no. Q. Which is it, yes or no? A. It is yes and no. If you want me to answer that,. I will. Do you want

me to answer that? Q. In other words, what has your relationship been like as a human being? A. If you want me to answer it—Q. You have answered it yes and no. A. He worked for me years ago, and while he worked for me—MR. PERUTO: Now—MR. STYLES: Let him go on. MR. PERUTO: Are you sure you want him to continue? MR. STYLES: Yes. A. (Continuing) In the time he worked for me I was robbed five times. MR. STYLES: I object to this. I ask for the withdrawal —MR. PERUTO: I asked you if you wanted this in. MR. STYLES: We can certainly determine as to whether or not it is relevant, as to what we ask him. THE COURT: Let us stop right there. MR. STYLES: I think this thing has come out, let it come out. THE COURT: I was trying to protect your client. MR. STYLES: No, you are not. THE COURT: Do you want it out?" Instead of answering the inquiry of the court, counsel went on: "By MR. STYLES: Q. Did this man ever rob this place? Did you have this man arrested for robbing your place? MR. PERUTO: You asked him, 'Did this man ever rob this place?' MR. STYLES: No, I withdraw it. MR. PERUTO: You withdraw it? MR. STYLES: Yes. BY MR. STYLES: Q. Did you ever have this man arrested for robbing this place? A. Because—MR. STYLES: I object."

The record clearly indicates, therefore, that defense counsel brought the prejudicial remarks upon himself and, in view of the evidence of guilt produced throughout the case, we doubt whether such prejudicial statements had any effect on the jury.

Appellant also contends that the evidence was insufficient because the sole witness who made out the case was Goldwire who, at times was contradictory. His credibility, however, was for the jury and they saw fit to believe him. Appellant was positively identified as the perpetrator of the burglary by Goldwire who was

well acquainted with him and who saw him under excellent visibility. Such evidence is sufficient to sustain the jury's verdict. *Commonwealth v. Foerst,* 161 Pa. Superior Ct. 111, 53 A. 2d 847. Appellant also complains that the trial court made improper or disparaging remarks of defense counsel in the presence of the jury which adversely affected the outcome of the case. The record reveals that much of this undesirable reparteé was brought about by defense counsel himself. Under such circumstances, we do not conclude such remarks to be reversible error.

The judgment of sentence is affirmed.