## Commonwealth v. Chambers

*Samuel J. Orr, IV, Keith E. Bell*, for the Commonwealth.
*Stanley Wolowski*, for defendant.

ACKER, *J.*, January 10, 1983—This defendant

has been convicted by a jury of retail theft.* This is defendant's fourth offense. Defendant has filed a motion for a new trial and a motion in arrest of judgment. By brief and oral argument, defendant's sole contention is that the trial court improperly allowed a Commonwealth witness to give an opinion regarding a method of shoplifting, believed to have been practiced in this case, which she had encountered in her experience as a security guard. On October 3, 1982, at about 1:00 p.m. defendant, Valerie Chambers, was on the second floor of the J. C. Penney Company located in the Shenango Valley Mall, Municipality of Hermitage, Mercer County, Pa. While in the furniture department, she picked up a clock valued at $17.99. Vera Peterson, an employee, observed defendant and thought that she was bringing the clock to her to "ring out." Defendant walked through the department to an elevator. There she laid the clock on a ledge in the gift wrap department. When the elevator door opened, defendant entered carrying the clock and a large white Penney's bag. If the item had been purchased, according to Mrs. Peterson, it would have been placed in a smaller bag. Becoming suspicious, Mrs. Peterson went down the escalator in time to see defendant exit the elevator carrying only the bag. Mrs. Peterson immediately went to customer security where she met Nancy Ryhal, the security officer. She identified defendant to the security officer by sight. Defendant then went into the major appliance department.

Another Penney's employee, Mary Kay Roden-

---

*As amended, December 2, 1976, P.L. 1230, April 28, 1978, P.L. 202, 18 Pa.C.S.A. §3929.

baugh was working in the furniture department at that time. She similarly observed the conduct of defendant and called the security office as defendant entered the elevator. In addition, she observed two females in the bedding department at about the same time, who were later identified as being in the company of defendant subsequent to the theft. She noted particularly that the women were nicely dressed. Mrs. Rodenbaugh, in the company of Nancy Ryhal, went to the appliance department and picked up the bag left by defendant and found the clock inside.

Nancy Ryhal, a security guard with four years' experience, testified that she was alerted to defendant by Mrs. Peterson. She saw defendant go into the major appliance department and enter an aisle lined with washing machines, the tops of which were about three feet off the ground. She saw defendant, without hesitation, place the white bag, subsequently discovered to contain the clock, on the second washing machine from the aisle and immediately exited the front entrance of the store. Nancy Ryhal then secured the clock and noted that none of the tags had been removed as would have occurred had it been purchased.

The Penney Company has a policy that a security officer cannot stop and detain a customer or potential customer for the police unless that security officer observed the person picking up articles in the store without paying for them.

In the Shenango Valley Mall, the security personnel attempt to assist each other. Nancy Ryhal immediately went to the Strouss store to alert its security officer, Sue Fernin. There, she saw defendant with the two other persons who had been in Penney's together in the cosmetic department. Later, she saw defendant sitting by the fountain in

the mall's common area, and the same two persons come out of the Rivet Shop and go to defendant.

Donald McClelland, a long-time employee in the major appliance department of Penney's, testified that Nancy Ryhal came to him and told him to be on the alert for two black women who would be looking for the package which Miss Ryhal left on the washing machine across the aisle. Approximately ten minutes later, the two black women involved in this case came down the main aisle and turned directly into the aisle where the washing machines were located. They stopped by the washing machines, looked at each other, shrugged and immediately left.

Officer John Piatek of the Hermitage Police testified that he had been in the company of Sue Fernin for the purpose of taking money to the bank when he saw Nancy Ryhal, the security officer at Penney's. At this time defendant was sitting on the ledge of a fountain in the mall's common area. Initially, she was alone but subsequently the other two women previously identified came to her. He asked for identification, but did not make an arrest at that time. Several days later he did, however, arrest defendant.

Nancy Ryhal was asked on direct examination by the district attorney how long she had been employed as a security officer. She responded that it was going on four years. She affirmed that part of her duties involved investigating retail theft or shoplifting. She stated that she had had about 100 apprehensions from the time she began working as a security officer and that she had become familiar with the many different ways and methods of shoplifting that are commonly encountered. Upon objection, the court confined the witness to the facts of this case. After some additional development as

to experience and training, she was turned over for cross-examination. Counsel did not object on the lack of qualification of the witness, but rather, on the relevancy of the question which was designed to elicit that the method attempted in this case was one of the recognized procedures used by shoplifters. Subsequently, he objected on the grounds that it was a hypothetical question. The witness testified that in her experience she had seen persons place merchandise in a department other than the one from which it had come. She testified further that "We found out that if you stay with the merchandise long enough and watch, another person will come and pick up that merchandise and leave the store with it." In cross-examination she stated that she had experience with approximately ten such cases. On these facts, this matter must be determined.

The jury was charged that in order to convict defendant the Commonwealth must establish, beyond a reasonable doubt, that defendant took possession of, carried away, transferred, or caused to be carried away, or transferred any merchandise displayed, held, stored or offered for sale by this store with the intent of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof. Therefore, the method in which the goods were taken, carried away, transferred or caused to be carried away or transferred was material. The general rule is that expert testimony is admissible in all cases, civil and criminal alike, when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience: Com. v. Leslie, 424 Pa. 331, 227 A. 2d 900 (1967). The court has broad discretion in such matters: Com. v. Colon, 264 Pa. Super. 314, 399

A. 2d 1068 (1979); Com. v. Snyder, 254 Pa. Super. 186, 385 A. 2d 588 (1978). Whether to admit such evidence has been held to be within the sound discretion of the trial court: Com. v. Washington, 235 Pa. Super. 339, 340 A. 2d 896 (1975).

The facts of this case demonstrate a concert of action. In Com. v. Canty, 7 D. & C. 3d 234 (1977), two women entered a retail store together and went directly to a department where both commenced secreting goods in the bloomers they were wearing. This was held to be sufficient evidence to demonstrate a concerted criminal act to commit retail theft and conspiracy.

The argument that the method the security officer testified about was not in evidence is without merit. The Commonwealth produced witnesses as recited above who had knowledge of how defendant and her co-conspirators operated while in the store and thereafter. The only facts not in evidence are the facts learned through the educational process of Nancy Ryhal's training and experience as a security officer. There is no requirement that an expert establish those experiences in life that prepare her for the granting of an opinion. This witness was subject to cross-examination. (Counsel could well have gone into cross-examination.) Counsel could well have gone into great detail as to the specific cases that she had witnessed this type of conduct in, but he elected not to do so. The opinion of expert witnesses must invariably rest, at least in part, upon sources other than those proved in court. An expert's opinion is derived not only from records and data but from education and a lifetime of experience: Com. v. Daniels, 480 Pa. 340, 390 A. 2d 172 (1978).

Wherefore, we see no merit in this contention.

Defendant contends that permitting the security

officer to testify to the method by which shoplifting can occur was to permit her to express an opinion upon the ultimate issue. This matter was well discussed in Com. v. Daniels, supra, at page 178. There, a pathologist was permitted to testify that the victim's death was a "homicide." This was claimed to be an usurption of the jury function on the ultimate issue. The court held,

"This argument is devoid of merit. As applied to the expression of an expert's opinion, the phrase 'usurping the function of the jury' is, as Dean Wigmore has well said, normally 'a mere bit of empty rhetoric,' VII Wigmore Evidence, Section 1920, at 17 (3d ed. 1940). ' . . . The witness, in expressing his opinion, is not attempting to usurp the jury's function; nor could he if he desired . . . He could not usurp it if he would, because the jury may still reject his opinion and accept some other view . . . ' The contention that an expert should never be permitted to express an opinion on an 'ultimate issue' is simply misconceived."

In Com. v. Seigrist, 253 Pa. Super. 411, 385 A. 2d 405 (1978), it was held not to be error for a treating physician to testify that the physical facts he observed were consistent with the victim's allegations.

Expert testimony is admissible where it involves explanations and inferences not within the range of ordinary training, knowledge and experience: Com. v. Crawford, 468 Pa. 565, 364 A. 2d 660 (1976).

There are certain types of crimes or subject matter which are deemed to be particularly adapted to expert testimony. When the issue is one of intoxication, lay people are permitted to render an opinion, although a jury hearing the facts making up

the opinion might well be able to arrive at a decision independent of the opinion: Com. v. Reynolds, 256 Pa. Super. 259, 389 A. 2d 1113 (1978); Com. v. Summers, 269 Pa. Super. 437, 410 A. 2d 336 (1979). An officer was permitted to testify concerning intoxication in Com. v. Boerner, 268 Pa. Super. 168, 407 A. 2d 883 (1979).

Testimony of an expert witness is frequently permitted as to whether the cause of a fire is incendiary in an arson case: Com. v. Colon, supra. Testimony is permitted by persons knowledgeable as to gambling as to whether a defendant was a bookie: Com. v. Ametrane, 205 Pa. Super. 567, 210 A. 2d 902 (1965), aff'd 422 Pa. 83, 221 A. 2d 296 (1966). A police officer was properly permitted to testify as to notations in the books of an accomplice in gambling that defendant was connected with illegal transactions: Com. v. Gurreri, 197 Pa. Super. 329, 178 A. 2d 808 (1962). In Com. v. Evans, 190 Pa. Super. 179, 154 A. 2d 57 (1959), aff'd 399 Pa. 387; 160 A. 2d 407 (1960), cert. denied, 364 U.S. 899 (1960), rehearing denied 364 U.S. 939 (1961), an expert was permitted to testify as to the interpretation of a mining contract concluding that it was, in fact, a construction contract.

Such common matters as whether a thread in a robe of a rape victim matched the thread attached to buttons which the expert testified had been ripped from the robe was proper in Com. v. Mayo, 272 Pa. Super. 115, 414 A. 2d 696 (1979). It has been held not to be in error to permit testimony that a substance looked like black paint in Com. v. Reed, 276 Pa. Super. 467, 419 A. 2d 552 (1980); or looked like blood in Com. v. Williams, 270 Pa. Super. 27, 410 A. 2d 880 (1979) and Com. v. Glover, 265 Pa. Super. 19, 401 A. 2d 779 (1979).

Although no case was found concerning shop-

lifting, this court is not able to conclude that the members of the jury would be so knowledgeable as to the art of shoplifting that they could not be assisted by expert testimony as to the method of shoplifting utilized in this case. The tendency is to become more liberal in this area, concerning the admission of opinion evidence, not only in criminal but civil cases as well: Huck-Gerhardt Co., Inc. v. Kendall, 189 Pa. Super. 126, 149 A. 2d 169 (1959).

Wherefore, we see no error and enter the following

## ORDER

And now, January 10, 1983, it is hereby ordered and decreed that the motion for a new trial is denied.

## ORDER

And now, January 10, 1983, it is hereby ordered and decreed that the motion in arrest of judgment is denied.