J-S09024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WESLEY WISE | : | |
| | : | |
| Appellant | : | No. 1145 EDA 2021 |

Appeal from the Judgment of Sentence Entered February 11, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0003063-2019.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED JULY 5, 2022**

Wesley Wise appeals from the judgment of sentence imposed after the trial court found him guilty of arson and criminal mischief.[1] Upon review, we affirm.

On March 26, 2019, Wise was arrested and charged with multiple offenses, which arose from the following facts as set forth by the trial court:

> Ms. Owens testified that on January 12, 2019, she resided in a two-story, three-bedroom home at 5835 Warrington Avenue, Philadelphia, Pennsylvania. She lived at the premises with two other adults — [Wise] and Mr. Bowe. The residents' three bedrooms were on the home's second floor, which they reached by stairs ascending from the downstairs dining room. [Wise] occupied the rear bedroom located approximately 10 feet beyond the top of the stairs. Ms. Owens occupied the middle bedroom, and Mr. Bowe occupied the master bedroom at the end of the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3301(a) and 3304(a).

hallway. A bathroom was located between the middle and master bedrooms. Ms. Owens saw [Wise] earlier in the day, around 2:00 p.m., entering the upstairs bathroom. Around 5:30 p.m., Ms. Owens went downstairs from her middle bedroom and entered the kitchen with her two visiting grandchildren, ages eight (8) and one (1). Around fifteen (15) minutes later, while preparing food at the microwave, Ms. Owens saw [Wise] walk through the dining room with a bag and exit the premises through the front door.

Around twenty (20) minutes later, Ms. Owens heard a smoke alarm and Mr. Bowe came running "down the steps saying the little room was on fire." Ms. Owens attempted to go upstairs to extinguish the fire with a pot of water, but the stairway was too [smoky] and she could not reach the second floor. Ms. Owens therefore evacuated the residence with her coughing grandchildren and called police once they were safely outside.

Mr. Bowe testified that around 6:45 p.m., he was awakened from sleep due to smoke coming from [Wise's] room. Wise's door was closed but smoke infused the entire upstairs. Mr. Bowe checked the upstairs rooms for people and tried extinguishing the fire with water obtained from the bathroom, "but the heat was too intense" and Mr. Bowe was coughing intensely. He therefore went downstairs, saw Ms. Owens in the kitchen with her grandchildren, and ultimately evacuated the home. Mr. Bowe could not resume occupancy of the home until three (3) to six (6) months after the fire.

Ms. Berry, who is Mr. Bowe's sister, lived two blocks away from the property. She testified that her two daughters owned the home but that she determined who lived in the residence. Ms. Berry verbally negotiated with [Wise] about the terms of his occupancy, and [Wise] paid Ms. Berry in food stamps. However, before the fire, they "started having little arguments" because [Wise] was late on his rent payments. After three (3) months of dilatory payments, Ms. Berry verbally told [Wise] he could no longer reside in the home and must leave the premises by January 12, 2019 (*i.e.*, the day of the fire). Ms. Berry also testified that the fire caused between $ 5000 and $ 7000 in property damage.

The Commonwealth lastly presented the testimony of the Fire Marshal, Lieutenant McMichael, whom the parties stipulated is "an expert in the field of arson investigation." Lieutenant McMichael prepared an investigative report explaining, *inter alia*, that around fifty (50) firefighters were dispatched to the property around 6:50

p.m. Lieutenant McMichael himself arrived around 7:45 p.m., after the fire was extinguished. His inspection of the property revealed that the fire originated "[i]nside the closet on the northwest corner" of [Wise's] room. In that area, there were no "competent ignition sources" that inadvertently could have caused the fire. The fire was not caused by the heater, the power strip, a heat gun sitting on the table, defective outlets, the radiator, the home's breaker, or any other electrical appliance.

After eliminating any other possible cause of the fire, Lieutenant McMichael "determined it was a fire started by human hand." The ignition source was "an open flame" — *i.e.*, a match or a lighter. On the same night as the fire, Lieutenant McMichael called [Wise's] cellular phone and advised him that he was investigating the fire and needed to ask [Wise] some questions, including whether [Wise] was smoking or using candles in his room. [Wise] replied that he was neither smoking nor using candles in the room. Lieutenant McMichael then asked for [Wise's] location so they could speak face-to-face, but [Wise] refused to disclose his whereabouts. Lieutenant McMichael also asked [Wise] whether he started the fire, and according to Lieutenant McMichael, [Wise] replied: "You can't put this on me, I wasn't there. You can't put it on me. You can't put me in two places at once because I have a good story."

Ms. Minnis testified that she was 76 years-old and resided at 1337 South 20th Street, Philadelphia, Pennsylvania. She had known [Wise] around fifty (50) years because he is friends with her four sons. Ms. Minnis testified that [Wise] came to her home around 8:00 a.m. on the day of the fire, which did not ignite until 10-12 hours later. According to Ms. Minnis, [Wise] at some point received a phone call from his sister advising there was "a fire or something at his house." [Wise] purportedly was shocked and responded, "You're kidding me."

Trial Court Opinion, 8/13/21, at 2-5 (citations and footnotes omitted).

Based on this evidence, the trial court found Wise guilty of arson and criminal mischief; he was acquitted of all other charges. On February 11, 2021, the court sentenced Wise to 5 to twelve 12 years' incarceration followed

by 3 years' probation for arson and 5 years' concurrent probation for criminal mischief. Wise filed a post-sentence motion, which the court denied.

Wise filed this timely appeal. Wise and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Wise raises the following two issues:

1. Was [] the evidence insufficient to sustain the verdicts of guilt on the charges of arson and criminal mischief as the Commonwealth's contradictory evidence of a timeline of [Wise] being at the scene of the fire (7:40 p.m. vs 5:30 p.m. vs 5:45 p.m.) in relation to when smoke was first smelled - 6:45 p.m., establishes that [Wise] could not have started the fire, and [was] any finding of guilt on such weak circumstantial evidence the product of conjecture and speculation that cannot be the basis of a guilty verdict?

2. Did [] the trial court abuse its discretion in [denying Wise's] post-sentence motion for a new trial, as the verdict was so contrary to the weight of the evidence as to shock one's sense of justice, where the testimony was vague, inconsistent and incredible?

Wise's Brief at 4.

In his first issue, Wise claims that the evidence was insufficient to convict him of arson and criminal mischief. Specifically, Wise claims that evidence was merely circumstantial. Although Wise acknowledges that circumstantial evidence may establish a crime here, he believes the evidence was insufficient to establish that he was the one who set the fire, as opposed to the other individuals who lived there. Wise maintains that the only evidence that possibly implicates him was Ms. Owens' testimony, which was

inconsistent as to the timing of the events that evening and whether she tried to put out the fire. Wise's Brief at 11.

In reviewing a sufficiency of the evidence claim, this Court:

> must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

**Commonwealth v. Koch**, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). However, "the inferences must flow from facts and circumstances proven in the record and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt." **Commonwealth v. Scott,** 597 A.2d 1220, 1221 (Pa. Super. 1991). "The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review." **Id.** "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Diamond,** 83 A.3d 119, 126 (Pa. 2013).

In pertinent part, 18 Pa.C.S.A. section 3301 provides:

(a) Arson endangering persons.--

(1) A person commits a felony of the first degree if he intentionally starts a fire or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire; or

(ii) he commits the act with the purpose of destroying or damaging an inhabited building or occupied structure of another.

18 Pa.C.S.A. § 3301(a)(1). Accordingly, the Commonwealth must establish beyond a reasonable doubt that: 1) there was a fire, 2) it was of incendiary origin, and 3) the defendant set the fire. **Commonwealth v. Ford**, 607 A.2d 764, 766 (Pa. Super. 1992). Direct evidence is not required. "'[P]roof of guilt especially in arson cases, may be established [through] circumstantial evidence.'" **Commonwealth v. Counterman**, 719 A.2d 284 (Pa. 1998) (*quoting* **Commonwealth v. DiNicola**, 468 A.2d 1078, 1081 (Pa. 1983). "[A]rson, by its very nature, is rarely committed in the presence of others, and a refusal to convict on circumstantial evidence alone would be tantamount to an invitation to commit the crime." **Commonwealth v. Colon**, 399 A.2d 1068, 1073 (Pa. Super. 1979).

To sustain a conviction for criminal mischief, the Commonwealth must prove that the defendant damaged "tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe)." 18 Pa.C.S.A. § 3304(a)(1).

Contrary to Wise's claim, our review of the evidence and testimony presented at trial and the inferences drawn therefrom shows that the evidence

was sufficient to establish that Wise was the one who started the fire and to convict him of both crimes.

Indisputably, an individual started the fire with an open flame in Wise's bedroom closet; no one except Wise had been in there. Wise, who was evicted as of the day of the fire, left the house carrying a bag; he was the only one who had a reason to start the fire. Not long after he left, the smoke alarm went off; this is evident despite the varying times reflected in the record. Ms. Owens and Mr. Bowe risked their lives and tried to extinguish the fire but had to evacuate, along with Ms. Owens' two young grandchildren. The trial court evidently did not believe Ms. Minnis' testimony that Wise was at her house since early on the day of the fire.

Ms. Owens and Mr. Bowe remained at the scene of the fire. However, Wise refused to return for questioning when asked by Lieutenant McMichael. Further, when Lieutenant McMichael asked Wise if he started the fire, he did not deny it, and became defensive telling him, "you can't put this on me, you can't put me in two places at once. . . . I have a good story." Notably, Ms. Owens, Mr. Bowe, and Ms. Berry all denied starting the fire, but Wise was the only one with a motive.

From this evidence, the trial court, as finder of fact, could reasonably infer that Wise was the one who started the fire, doing so before he left the house. This is so despite the inconsistent testimony regarding the timeline of events that day. The cumulative evidence and the inferences that can be drawn therefrom view in the light most favorable to the Commonwealth as the

verdict winner were sufficient to sustain Wise's conviction for arson and criminal mischief.

In his second issue, Wise claims that the trial court erred in denying his motion for a new trial on the basis that the verdict was against the weight of the evidence. Again, Wise maintains that the evidence failed to establish that he was the one that started the fire. Ms. Owens' testimony was too inconsistent and contradictory to place him at the house near the time the fire started. Wise therefore claims the trial court erred. Wise's Brief at 23.

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. **Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.**
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> * * *
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. **Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.**

***Commonwealth v. Clay***, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted) (emphasis added).  Absent an abuse of discretion, the trial court's decision will not be disturbed.  ***See Commonwealth v. Griffin***, 515 A.2d 865, 869 (Pa. 1986).  An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007).  By contrast, a proper exercise of discretion "conforms to the law and is based on the facts of record." ***Id.***

Initially, we observe that, typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence and observe the demeanor of the witnesses, "will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action." ***Criswell v. King***, 834 A.2d 505, 512 (Pa. 2003).  Here, however, a non-jury trial was held.  Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience.  Notwithstanding this, we consider whether the trial court's decision was an abuse of discretion.

Not surprisingly, the trial court concluded that its non-jury verdict was not against the weight of the evidence.  In reaching its decision, the trial court thoroughly reviewed the evidence presented to support Wise's convictions.  It further explained:

> The . . . testimony supports a weighty inference that [Wise] ignited the fire in his room before leaving the premises.
>
> Moreover, [Wise] exaggerates the time discrepancy in the testimony. Ms. Owens testified that she came downstairs and went to the kitchen around 5:30 p.m., and that she saw [Wise] leaving the premises around fifteen minutes later (i.e., around 5:45 p.m.). Twenty minutes after that (i.e., around 6:05), Mr. Bowe came downstairs and alerted Ms. Owens to the fire in [Wise's] room. After attempting unsuccessfully to ascend the stairs to pour water on the fire, Ms. Owens evacuated the home with her two young grandchildren. She then flagged down a neighbor and called the police. Firefighters were dispatched to the property around 6:50 p.m.
>
> Ms. Owens was exposed to a fire that imperiled both herself and her grandchildren. Any imprecision or minor inconsistencies in her testimony regarding the timing of the hazardous event does not outweigh the testimony, and reasonable inferences therefrom, establishing [Wise's] guilt. [Wise's] challenge to the weight of the evidence is therefore meritless.

Trial Court Opinion, 8/13/21, at 8-9 (citations omitted). It is evident that the trial court chose to believe the evidence presented by the Commonwealth and the logical inferences derived therefrom. "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Roberts**, 133 A.3d 759, 767 (Pa. Super. 2016).

Based upon our review of the record, and the trial court's rationale for denying Wise's motion, we conclude that the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/5/2022