386 A.2d 1034

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David Lee DEETERS, Appellant.**

Superior Court of Pennsylvania.

Argued April 15, 1977.

Decided April 28, 1978.

344

John Woodcock, Jr., Hollidaysburg, for appellant.

Fred B. Gieg, Jr., Assistant District Attorney, Altoona, submitted a brief for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

Appellant, a juvenile, pleaded guilty to one count of burglary,[1] and was convicted and sentenced on one count of theft by unlawful taking,[2] and two counts of retail theft.[3] On this appeal he contends that the evidence was insufficient to support the convictions.

In deciding the sufficiency of evidence, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–89, 275 A.2d 46, 49 (1971). However, guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Super. 513, 312 A.2d 430 (1973).

–1–

Appellant was convicted of the theft on July 9, 1976, of a car battery and a box of tools. The *only* evidence in support

1. The Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. 3502. Appellant does not challenge the validity of his plea.

2. The Crimes Code, *supra.*; 18 Pa.C.S. 3921.

3. The Crimes Code, *supra*; 18 Pa.C.S. 3929.

of this conviction was the testimony of one Twila Simmers, who testified as follows:

Q. And, ah, then what happened?

A. Dave [appellant] went into an alley, I think, I think Bob went with him and they went, they got a battery

. . .

THE COURT: Who's Bob?

A. The one over there in the other blue shirt.

THE COURT: Bob Rumbaugh.

A. Yeah.

THE COURT: Alright, go ahead.

A. They went into the alley, got a battery and they also got out of a white van with letters on, they got a red tool box and they brought it over and showed us at the Pet Shop.

Q. Let me stop you there a minute, Twila. Where did they get these items from, do you know?

A. By 1000 Street, out of a white van with letters on.

N.T. 5–6.

 To be guilty of theft by unlawful taking, a person must unlawfully take, or exercise unlawful control over, movable property of another with intent to deprive him thereof. 18 Pa.C.S. § 3921(a). *Commonwealth v. Richardson*, 238 Pa.Super. 410, 357 A.2d 671 (1976). Here the evidence did not establish any of these elements: Whose battery and tool box did appellant and Rumbaugh take? Why did they take them? Did they have permission to take them? Were they going to work with them? Did they keep them? One may answer these questions with some assurance, but not with such assurance as is beyond a reasonable doubt.

–2–

As mentioned, appellant was convicted on two counts of retail theft. The statute on retail theft provides, in pertinent part:

§ 329. Retail theft

(a) Offense defined.—A person is guilty of a retail theft if he:

(1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;

—a—

The first incident involved the theft of some rings from the Tyrone News Agency. Twila Simmers testified that on the morning of July 10, 1976, she was with appellant, Anthony Lopreste, Bob Rumbaugh, and Jim Dixon. N.T. 6–8. At trial the following exchange occurred:

Q. Let me ask you this, Twila, was there a discussion about the Tyrone News Agency?

A. Yeah.

Q. What, what did they say?

A. They took rings out of there.

N.T. 8.

At this point in the testimony Ms. Simmers did not say to whom she referred by her use of the pronoun "[t]hey". However, she later testified that she referred to Bob Rumbaugh, Jim Dixon, and Anthony Lopreste; she specifically said she did not refer to appellant. Thus:

A. Okay, me and Jim Dixon were down by the Bookstore, and with Bob also, and Anthony said . . .

THE COURT: Bob, you mean Rumbaugh?

A. Yes.

THE COURT: Yes, alright.

A. And, Anthony and them were saying about . . .

MR. WOODCOCK: That's objected to who was saying what here.

A. Okay, Anthony was there and he said that . . .

348

THE COURT: Is that Anthony Lopreste?

A. Yes.

THE COURT: Alright.

MR. WOODCOCK: Was the defendant [appellant] David, there?

A. No.

MR. WOODCOCK: Alright, then we'd object to anything Anthony said when David was not present.

THE COURT: We'll sustain the objection.

MR. WOODCOCK: Well, David's the only one on trial for these two.

A. David and Bob . . .

THE COURT: They're both being . . . we're hearing the case involving both of them. Go ahead.

A. Okay. Anthony said about he got some rings out of the Agency store. He showed us them, a red one and a white one. And, we, me and Jim wanted to see them so he left us see them and then he said about going back in and An–, not Anthony, Bob went to Vicky's, while he was in the store . . .

MR. WOODCOCK: If the Court please, she continues to talk about Bob, and Bob wasn't there.

A. He was there but he split. He went to Vicky's place.

MR. WOODCOCK: When he's telling this, when he's telling this story, Bob isn't there. In front of the News Agency. You just testified he wasn't there.

THE COURT: Who wasn't there?

MR. WOODCOCK: Bob wasn't there.

THE COURT: No, his name isn't Bob.

MR. WOODCOCK: Dave, I mean Dave, pardon me. I'm wrong.

A. No, Dave wasn't there, Bob was.

THE COURT: She's already said . . .

MR. WOODCOCK: Alright, I got their names mixed up.

A. Okay, Bob went to Vicky's and Anthony went back in the store. And took some more rings and stuff. Me and Jim Dixon both seen him.

Q. Alright, now, who, who was with Anthony?

A. Nobody.

N.T. 24–25.

Furthermore, Jim Dixon, the Commonwealth's only other witness in regard to this incident, corroborated Ms. Simmers' testimony:

Q. Alright. Now, who took the rings?

A. Anthony.

Q. Anthony did. Alright, now was there anything else taken to your knowledge?

A. Well, ah, no I can't say.

Q. Okay, now what happened after the rings were taken?

A. We left there, went out around the corner, he gave one to me and my girl.

Q. Alright. Now, who's your girl?

A. Lorraine Simmers.

Q. Lorraine. Alright, now, what, if anything, did Deeters have to do with this transaction, if anything?

A. At the News Agency?

Q. Uh-huh.

A. He didn't have nothing to do with it.

N.T. 32.

■ Therefore, there was no evidence at all connecting appellant with theft of the rings.

–b–

The second incident involved the theft of some clothes from the Dollar General Store in Tyrone. In regard to this incident Jim Dixon did implicate appellant:

Q. What do you know that Mr. Deeters with relation to the Dollar Store? What do you know?

A. He took a pair of pants, a shirt, and a pair of boots.

Q. How do you know that?

A. Because I seen him going into the General Dollar Store.

Q. And he came out with these items?

A. Yeah, stuffed in his jacket.

Q. Did he say anything to you about what he did in there?

A. That he took the clothes and stuff.

Q. Did he tell you he did that?

A. Yeah.

Q. Did he tell you he didn't pay for them?

A. I know he didn't pay for them.

Q. How do you know that?

A. Because he didn't have no money, 'cause we was sitting on the street asking people for money.

N.T. 33

This evidence was sufficient. It showed that appellant had taken a merchant's goods. Appellant's intent to deprive the merchant of the goods without paying for them may be inferred from the evidence that appellant concealed them. 18 Pa.C.S. 3929(c). *See Commonwealth v. Shapiro*, 223 Pa. Super. 15, 297 A.2d 161 (1972).[4]

–3–

■ It thus appears that of three convictions, two must be vacated. Under *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 65, 296 A.2d 883, 886 (1972), "[w]hen the invalidity of the conviction on one count which may have influenced the sentence [on another count] becomes apparent on an appeal, . . . the proper course is usually to vacate the sen-

4. A further comment is, however, in order. The citation referred to the theft of one leisure suit, one pair of shoes, and one shirt. The assistant manager of the store testified to the theft of two leisure suits, two pairs of shoes, two shirts, and one pair of dress pants. N.T. 17. Ms. Simmers also testified that clothes were taken from the store by several boys, but she said appellant was not one of them. N.T. 26–27. It may therefore be that the incident referred to by Jim Dixon in his testimony quoted above was not the incident referred to in the citation. "[A] pair of pants, a shirt, and a pair of boots" does not seem the same as "one leisure *suit,* one pair of *shoes,* and one shirt." However, appellant made no objection to Dixon's testimony.

tences and remand for resentencing on the valid counts without consideration of the invalid one."

The order of disposition is vacated and the case is remanded for imposition of a dispositional order in accordance with this opinion.

WATKINS, former President Judge, and VAN der VOORT, J., did not participate in the consideration or decision of this case.