414 A.2d 696

**COMMONWEALTH of Pennsylvania**

v.

**Ronald K. MAYO, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Filed Nov. 27, 1979.

Lois B. Anderson, Assistant Public Defender, Reading, for appellant.

J. Michael Morrissey, District Attorney, Reading, for Commonwealth, appellee.

Before PRICE, SPAETH and WATKINS, JJ.

PRICE, Judge:

Following a jury trial commenced on July 12, 1977, appellant was found guilty of rape,[1] indecent assault,[2] aggravated assault,[3] and involuntary deviate sexual intercourse.[4] Post-trial motions were denied and the following sentences were imposed by the Berks County Court of Common Pleas: costs of prosecution, a fine of $500, and a prison term of four (4) to twelve (12) years on the rape count; costs of prosecution, a fine of $100, and a concurrent prison term of four (4) to twelve (12) years on the involuntary deviate sexual intercourse count; and costs of prosecution, five (5) years of special probation consecutive to the previously imposed prison terms, and a fine of $500 in the first twenty-three months of probation on the aggravated assault count. The indecent assault count was dismissed. Appellant now alleges several instances of error in the trial court. Because we agree with one of these contentions, the case is remanded for resentencing.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978), the following facts were adduced at trial. Miss Geri Lynn Styk testified that on the morning of February 12, 1977, she was present in a basement apartment which she occupied with her daughter and a roommate, Patty Snyder. At approximately 3:00 a. m., appellant telephoned and asked Miss Styk if she knew of Miss Snyder's whereabouts. Miss Styk answered in the negative and appellant informed her that he would be

1. 18 Pa.C.S. § 3121(2).

2. 18 Pa.C.S. § 3126(1).

3. 18 Pa.C.S. § 2702(a)(2), (4).

4. 18 Pa.C.S. § 3123(2).

coming to the apartment. Some ten minutes later, appellant arrived with a companion, but both were denied entrance when Miss Styk again insisted that she was ignorant of Miss Snyder's location. Appellant nevertheless opened the door and stepped into the apartment with his companion. After the two intruders were seated for some moments, Miss Styk accused them of taking her wallet and demanded that they leave. Appellant then grabbed Miss Styk by the hand and forcibly led her to the kitchen. There, he pulled a six inch long steak knife out of the dish rack, placed it to the victim's throat, and said, "Do you know what I do to people that accuse me of doing things that I don't do? . . . I kill them." (N.T. 11). Appellant proceeded to scratch some letters on the victim's chest with the knife. No blood was drawn, and the marks disappeared later that evening.

Following this incident, appellant opened Miss Styk's robe, walked her into the bedroom, and there raped her. Appellant's companion, who was not further identified during trial, then repeated the act, and the two continued to alternate imposing themselves on the victim. Both miscreants finally left the apartment at approximately 6:00 a. m.

We will first address those contentions of appellant which we determine to be without merit. He argues initially that the trial court erred in refusing counsel's request for individual voir dire. It is fundamental that the examination of jurors under voir dire is solely for the purpose of securing a competent, fair, impartial, and unprejudiced jury. *Commonwealth v. Hoffman*, 263 Pa.Super. 442, 398 A.2d 658 (1979); *Commonwealth v. Perea*, 252 Pa.Super. 272, 381 A.2d 494 (1977). So as to obtain such a panel, the trial judge may grant, within his sound discretion,[5] the right to conduct individual voir dire of the prospective jurors. *Commonwealth v. Howard*, 248 Pa.Super. 246, 375 A.2d 79 (1977); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871

5. In capital cases, individual voir dire is mandated, unless waived by the defendant. *Commonwealth v. Howard*, 248 Pa.Super. 246, 375 A.2d 79 (1977); *Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976); Pa.R.Crim.P. 1106(e).

(1976). Appellant claims that individual voir dire was here necessary because he is black and the jury panel was composed exclusively of whites.

We addressed this same argument in *Commonwealth v. Howard, supra.* There, we observed that the single circumstance of a defendant's being black, while the prospective jurors are uniformly white, does not raise such a likelihood of prejudice as to render a trial judge's decision to conduct collective voir dire an abuse of discretion. Of course, a defendant is entitled to question prospective jurors on matters of racial bias and discrimination, *Commonwealth v. Foster*, 221 Pa.Super. 426, 293 A.2d 94 (1972), and the trial judge permitted appellant's counsel to question the jurors collectively in this area. Since appellant advances no additional facts which might indicate a necessity for individual voir dire, the prospective jurors were adequately queried and the trial court did not abuse its discretion in refusing the request.

Appellant's next contention is predicated on the following comment made by the trial judge to the jury after it had returned a guilty verdict and been polled:

"The jury has been polled and responded in accordance with their written verdict. I wish to thank you. Although it is of no concern, had I been trying the case as both judge and jury, I would have arrived at the same conclusion." (N.T. 93).

A timely objection was made, and appellant argues that the remark indicated the judge's settled opinion, an opinion which denied him the right to have his post-trial motions impartially considered.

While appellant is correct in asserting that an impartial judge is fundamental to a fair trial, *see, e. g., Commonwealth v. Laws*, 474 Pa. 318, 378 A.2d 812 (1977); *Commonwealth v. Bastone*, 466 Pa. 548, 353 A.2d 827 (1976), we are at a loss to see how this isolated comment would irretrievably prejudice his right to a fair trial. An unbiased judge is

necessary, in part, because of the enormous influence he exerts over the jurors. He is the personification and representation of the law in the courtroom, and any action on his part which conveys, either implicitly or explicitly, his condemnation of one party will inevitably carry considerable weight in the minds of the jurors. *See, e. g., Commonwealth v. Laws, supra; Commonwealth v. England,* 474 Pa. 1, 375 A.2d 1292 (1977). Thus, an unadorned statement of personal belief in the guilt of the defendant during trial would certainly be prejudicial. Subsequent to trial, it was a harmless statement designed, as the trial judge suggested, to ease the consciences of the jurors following a difficult experience. The jury was not affected by the remark, and the judge's personal opinion at this stage was quite irrelevant; even had he personally considered appellant guilty, the single salient fact was that the jury had so believed. The comment does not, therefore, require a new trial.

Appellant next contests the admission of the testimony of two F.B.I. agents. The facts are these. The Commonwealth first called agent James A. Porter to the stand. Prior to Mr. Porter's testimony, the assistant district attorney informed the court that the witness would testify that he found traces of semen stains on a beige bathrobe which the victim was wearing at times during the assault. He would also testify that no such stain was found on a blue nightgown worn by Miss Styk prior to the attack. An objection to this line of testimony was overruled, and Mr. Porter proceeded to so testify. Immediately thereafter, the Commonwealth called agent Frederick J. Wallace and an offer of proof was again requested. At that time the court was apprised that the witness would testify that a microscopic examination of the robe and the buttons found on the floor of the bedroom indicated that these identical buttons were forcibly removed. He would also testify that certain buttons were missing from the robe. This testimony was similarly permitted over objection. Appellant now contends that: (1) there was no connection between the evidence and

appellant; and (2) agent Wallace testified to matters observable by a non-expert.

As to the first allegation, all of the testimony presented by the agents corroborated in some way the victim's contention that forcible intercourse had indeed occurred, and was thus admissible for this purpose. *See Commonwealth v. Dugan*, 252 Pa.Super. 377, 381 A.2d 967 (1977). Second, while agent Wallace testified that two buttons were forcibly ripped off the robe, a conclusion properly reached by an expert after microscopic examination of the piece, he also testified that the two buttons were missing from the robe, a fact that might have been observed by the jury without the testimony of an expert. However, this witness also matched the threads attached to the buttons with the threads still in the robe, a proper matter for the acceptance of expert testimony. Any objection based on this is therefore specious. The testimony was properly admitted.

Appellant's next argument concerns the sentencing procedures employed by the trial court. At sentencing, the court had the benefit of a pre-sentence report which included, aside from the usual information regarding the nature of the offense and the character of appellant, a specific recommendation as to the length of appellant's sentence. Apparently, such a recommendation by the Probation and Parole Department is a typical practice in Berks County, and at least in the present case, was specifically requested by the presiding judge. (Notes of Sentencing 11). A review of the sentencing hearing indicates that this recommendation was utilized by the court, although the length of the sentences was modified:

> "I believe that the recommendation in its general aspect was a reflection of all the totality of the circumstances. However, I intend to reduce the minimum and the maximum to a degree . . . ." (Notes of Sentencing 11).

Appellant now contends that the court erred in accepting these recommendations and abrogating its duty to impose an individual sentence.[6] We do not agree.

First, we do not consider it improper for the court to here consider a recommendation of punishment proposed by the Parole Department. While it is true that our rules of criminal procedure do not specifically provide for such a recommendation in the pre-sentence report,[7] there is nothing amiss in a trial judge requesting guidance on the severity of the sentence. Sentencing may be the denouement in a long, sometimes tedious criminal proceeding, but it is nonetheless absolutely vital. The sentence meted out to a defendant might well determine his subsequent attitude toward the judicial system and the society which it serves. In these circumstances, we believe that it is not only proper but incumbent on the trial judge to seek out all possible information and recommendations to assist him in his decision. Of course, this is not to intimate that a judge may abrogate his duty to impose individual sentence by deferring capriciously to these recommendations. They may not be blindly employed for the purpose of relieving the sentencing judge of the arduous task of weighing the complex variables inherent in the sentencing procedure. Rather, they may be reasonably adopted, modified, or rejected, subsequent to a searching and independent review of the pre-sentence report and all other pertinent information.

Appellant argues, however, that even assuming the recommendation was proper, the record does not manifest such a reasoned adoption due to the court's failure to comply with the mandates of *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977). We disagree. In *Riggins*, our

6. In a separate opinion dated May 23, 1978, the trial court, per Wesner, J., stated simply that "[u]nder the Standards, it appears that in fact the Probation Office may recommend the length of sentence."

7. Pa.R.Crim.P. 1403 states:

"(3) The pre-sentence investigation report shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the court in determining sentence."

supreme court recognized that the Pennsylvania system of indeterminate, and thus individual, sentencing vests the trial judge with a broad discretion which, unconstrained, could be subject to abuse. To ensure a reasoned sentence based on facts and not surmise, and to allow an appellate court to more effectively review the propriety of that sentence, the court in *Riggins* required the trial judge to articulate his reasons for selecting the particular sentence imposed. *See Commonwealth v. Wareham*, 259 Pa.Super. 527, 393 A.2d 951 (1978); *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393 A.2d 935 (1978); *Commonwealth v. Norman*, 259 Pa.Super. 301, 393 A.2d 837 (1978). While this does not mean that the sentencing judge must list seriatim his responses to the guidelines enunciated in the Sentence Code, *see* 18 Pa.C.S. §§ 1321–26, he should nevertheless make plain that he did indeed consider and apply these legislatively formulated criteria. *Commonwealth v. Wareham, supra.*

A reading of the pertinent portion of the sentencing record convinces us that the sentencing court adhered to these standards:

"THE COURT: I see. Well, I believe in a charge involving two felonies and one misdemeanor 1 and I guess a misdemeanor 2, as I remember, probation in my firm belief would be totally inappropriate. Partial confinement, I believe, in a situation like this would be unrealistic, at least at this time, although I do believe very strongly in early release and work release programs, although this is not the time for it. I therefore believe that, by virtue of the very serious nature of the convictions, and again I repeat that the jury has convicted you and, therefore, you stand guilty of these crimes, and there is no other way I can do it. It's conceivable that you may, to some degree, have been a victim of the circumstance. It's not for me to pass judgment in the sense of making a case. However, in all honesty, had I sat on the jury, I would have had difficulty in not believing that, to some degree, you were involved in this incident. That's my own feeling. In no way does it change it. In no way is that part

of my judgment for sentence. I am not part of the fact-finding circumstance and I am bound at this time to accept the jury's judgment as to your involvement. You stand before me convicted no matter what the circumstance, . . . .

I believe for the reasons that I have stated before that total confinement is necessary under all the circumstances. I believe that the recommendation in its general aspect was a reflection of all the totality of the circumstances. However, I intend to reduce the minimum and the maximum to a degree, and I do it on two bases. *One, he has no prior record.* This is the most important thing that has been said to me, in my opinion, today. He appears to be—even though perhaps misguided, *he seems to be a person that has some hope for the future* and, although I may never take into consideration race, color or creed, I recognize the futility of stating to anyone of a different color skin or a different basis of religion or a difference in sex that those things are of no consequence. We are, I think, in better circumstance on these matters today than we were some years ago, but I believe we have a long way to go. I hope for the defendant's sake that he does not blame his circumstance totally upon the question of race." (Notes of Sentencing 11–12) (emphasis added).

■ Coupled with the court's obvious consideration of the pre-sentence report, we conclude that this explanation sufficiently comports with the demands imposed by *Riggins.*

■ Finally, appellant argues that there was no evidence adduced to support a conviction of aggravated assault.[8]

8. Appellant also asserts that the verdict was against the weight of the evidence. The argument is based on the three alibi witnesses presented by appellant, all of whom testified that the latter was not at the scene of the assault and rape. This, however, goes to the credibility of the witnesses, and as such, is a question for the finder of fact, who may believe all, part, or none of the proffered testimony. *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Cristina,* 481 Pa. 44, 391 A.2d 1307 (1978); *Commonwealth v. Washington,* 259 Pa.Super. 407, 393 A.2d 891 (1978). The record further reveals that appellant later admitted that he held a

With this we must agree. In determining whether the evidence produced is sufficient to support a conviction, the test to be applied is whether, accepting as true all evidence and all reasonable inferences therefrom on which if believed the fact-finder could have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the accused is guilty of the crime charged. *Commonwealth v. Richbourg*, 260 Pa.Super. 438, 394 A.2d 1007 (1978); *Commonwealth v. Deeters*, 255 Pa.Super. 343, 386 A.2d 1034 (1978). These reasonable inferences must be predicated on proven facts and circumstances, not solely on suspicion or surmise. *Commonwealth v. Frey*, 264 Pa.Super. 212, 399 A.2d 742 (1979); *Commonwealth v. Roach*, 260 Pa.Super. 261, 393 A.2d 1253 (1978). Instantly, we conclude that the Commonwealth failed to produce the quantum of evidence necessary to satisfy this standard.

Aggravated assault is defined as follows:

"A person is guilty of aggravated assault if he: . . . .

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon."
18 Pa.C.S. § 2702(a).

Thus, it was incumbent on the Commonwealth to prove that appellant, using a deadly weapon, either attempted to cause, or actually caused bodily injury to Miss Styk.

The deadly weapon requirement need give us little pause; employed as it was, the steak knife constituted a device quite likely to produce death or serious bodily injury. *See* 18 Pa.C.S. § 2301. It is not so clear, however, that any "bodily injury" was inflicted on the victim. The Crimes Code defines that term as the "[i]mpairment of physical condition or substantial pain." (18 Pa.C.S. § 2301). Yet when questioned as to what was scratched on her chest, Miss Styk answered: "You couldn't really tell what it was. There was a "K" and maybe a "K" and an "N". I don't know. You couldn't really see them that good." (N.T. 11). She subsequently testified that the scratches disappeared entirely

knife to Miss Styk, but only scratched her; thus conceding his presence at the scene.

from view a few hours following the incident, and certainly before she spoke to the police (some eighteen hours following the assault). This patently does not constitute an impairment of physical functions, and while Miss Styk did not testify specifically as to whether she suffered substantial pain, it could be reasonably inferred that the light scratches were insufficient to cause this type of suffering.

Our analysis is not concluded, however, for the trial court emphasized in its opinion that it believed the requisites of the crime were satisfied because appellant had *attempted* to cause bodily injury. Again, we are constrained to disagree. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). While it is well established that intent may be proven by direct or circumstantial evidence, *see Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978); *Commonwealth v. Caye*, 465 Pa. 98, 348 A.2d 136 (1975); *Commonwealth v. Kibe*, 258 Pa.Super. 353, 392 A.2d 831 (1978), there is simply no evidence, circumstantial or otherwise, to indicate that appellant attempted to inflict bodily harm, as that term is defined by the Crimes Code. In *Alexander*, for example, the defendant approached his victim on the street and struck him once in the face with a closed fist. The victim fell to the ground, but never lost consciousness, and was later treated for a nose injury. Our supreme court, in reversing the defendant's conviction for aggravated assault, reasoned that since serious bodily injury[9] was not actually inflicted, the charge could be supported only if the evidence sustained a finding that the blow was accompanied by the intent to inflict serious bodily injury. Because the defendant denied any such intent, any evidence supporting the intent had to be gleaned from the circumstances. In failing to find such evidence, the court noted that:

**9.** We are aware that *Alexander* concerned that portion of the aggravated assault statute dealing with *serious* bodily harm. While the instant case deals only with bodily harm, the discussion in *Alexander* treating the manifestation of intent from surrounding circumstances remains clearly apposite.

"There is no evidence that appellant was disproportionately larger or stronger than the victim; appellant was not restrained from escalating his attack upon the victim; appellant had no weapon or other implement to aid his attack; appellant made no statements before, during, or after the attack which might indicate his intent to inflict further injury upon the victim." *Id.*, 477 Pa. at 194, 383 A.2d at 889.

Although these factors are illustrative rather than exhaustive, and while the court went on to stress that a simple assault combined with other circumstances indicating an attempt to inflict serious bodily harm may raise the crime to aggravated assault, those crucial surrounding circumstances are here absent.[10] Although appellant was certainly more physically powerful than his victim, and at least suggested the possibility of her death, we view the crucial fact to be his failure to pursue his obvious opportunity to inflict considerable pain or injury on Miss Styk. Appellant's actions all point decisively to an intent not to inflict bodily injury, but to frighten and/or humiliate Miss Styk, a design which was in fact eminently successful. Indeed, the Commonwealth in its brief to this court tacitly concedes the point:

"The testimony indicates that the victim was *threatened* by the appellant by the use of a knife which the appellant placed at her throat. She also testified that *her fear* was augmented by the fact that she was alone in the apartment in the presence of two grown males and that *she feared* not only for her own safety, but for the safety of

10. *Cf. Commonwealth v. Kibe*, 258 Pa.Super. 353, 392 A.2d 831 (1978). In *Kibe*, the defendant fractured the nose of his victim and was convicted of aggravated assault. In affirming, this court took note of the *Alexander* decision, but found that the surrounding circumstances indicated that the defendant intended to inflict serious bodily injury, thus raising a simple assault to an aggravated assault. We stated that sufficient evidence was adduced to prove aggravated assault "[w]here a lone woman is approached at a late hour from the rear without warning by a male, ordered into her car, put in fear of an impending rape, and upon her refusal, struck with such force in the face as to fracture her nose, . . . ." *Id.* 258 Pa.Super. at 358, 392 A.2d at 833.

her sleeping two year old child." (Brief for Appellee at 2) (emphasis added).

In accepting this characterization of the incident, the Commonwealth undermines its argument as to sufficiency, for while we quite agree that Miss Styk was placed in considerable fear, this is simply not sufficient to sustain a conviction for aggravated assault. Of course, this conclusion does not absolve appellant of culpability. Although we cannot sustain the conviction for *aggravated* assault, appellant's actions may quite clearly be categorized as a simple assault under 18 Pa.C.S. § 2701: [11]

A person is guilty of assault if he: . . .

(3) attempts by physical menace to put another in fear of imminent serious bodily injury."

The two acts of holding the knife to the throat of Miss Styk and mentioning his propensity to kill unjust accusers were obviously intended to place the victim in considerable fear of serious bodily harm as a prelude to the forthcoming rape. Thus, we must remand the case with instructions to reduce the offense on which appellant was convicted from aggravated assault to simple assault, and to resentence him on the latter charge.[12] *See Commonwealth v. Alexander, supra; Commonwealth v. Russell,* 261 Pa.Super. 151, 395 A.2d 1365 (1978).

The judgment of sentence on the aggravated assault count is therefore vacated, and the case remanded for resentencing on simple assault only. In all other respects, judgment of sentence is affirmed.

SPAETH, J., concurs in the result.

11. Simple assault is a lesser included offense of aggravated assault. *Commonwealth v. Russell,* 261 Pa.Super. 151, 395 A.2d 1365 (1978); *Commonwealth v. Hill,* 237 Pa.Super. 543, 353 A.2d 870 (1975).

12. Simple assault is a misdemeanor of the second degree punishable by a maximum prison term of two years. Appellant's aggravated assault conviction was a misdemeanor of the first degree, punishable by a maximum prison term of five years. *See* 18 Pa.C.S. § 106(b)(6) and (7).