504 A.2d 1291

**COMMONWEALTH of Pennsylvania**

v.

**John LARK, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1985.

Filed Feb. 12, 1986.

William T. Cannon, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WIEAND, CERCONE and ROBERTS, JJ.

CERCONE, Judge:

This is a direct appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County following a jury verdict finding appellant guilty of third degree murder. A sentence of life imprisonment was imposed and this appeal followed.

Appellant was charged in the court below with the murder of his infant daughter. On August 17, 1983, police responded to a call at 1926 North 18th Street in Philadelphia. Upon arrival the police were met by Lee Paul, the mother of the child, who resided at that location with appellant. She told the police that appellant was beating the baby. The police entered the home, confronted the appellant, subdued him after a brief struggle, and found in the upstairs bedroom the lifeless body of appellant's baby daughter who had sustained massive head trauma. Lee Paul testified at trial that she and appellant were in bed,

about to fall asleep, when appellant snatched the child from her crib, held her aloft, refused to release the baby, and bit down on the baby's head while professing his love for the baby. Dr. Paul J. Hoyer, Assistant Medical Examiner for Philadelphia, who pronounced the baby dead at the crime scene, testified that the baby died of acute head injuries inflicted probably in two stages.

The defense offered numerous fact witnesses at trial who testified that for the thirty-six hour period before the crime the appellant had ingested a large amount of the drug PCP. A drug expert testified to the hallucinatory effects of PCP and a psychiatrist, Dr. Jon Bjornson, testified that in his opinion, based on several psychiatric interviews, appellant was incapable of formulating the willful intent to kill at the time of his overt acts. The jury returned a verdict of guilty of murder in the third degree.

Appellant first claims that the lower court's refusal to allow defense counsel to ask certain questions of prospective jurors individually constitutes reversible error. Rule 1106(d), Pennsylvania Rule of Criminal Procedure, provides:

> The judge may permit the defense and the prosecution to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the Court shall permit the defense and the prosecution to supplement the examination by such further inquiry as it deems proper.

Appellant claims that the scope of the *voir dire* as conducted by the trial court fell far short of the full examination to which the defendant was entitled. In support of this allegation, he lists four questions which the court should have posed or should have allowed him to ask each juror individually.[1] He first claims that the court erred in not asking the jurors if they had ever been the "victim" of a crime of violence, rather than, as the court

---

1. At the outset of *voir dire*, the trial judge questioned the prospective jurors collectively. Then he questioned each member of the panel individually, and followed up on the responses to the collectively-asked questions. The Commonwealth and defense were then given an opportunity to individually question each juror.

did, whether they had been "involved" in a crime of violence. In *Commonwealth v. Fulton,* 271 Pa.Superior Ct. 430, 432–33, 413 A.2d 742 (1979), this court held that the term "involved" was broad enough to include the concept of "victimization" so as to protect the defendant in jury selection. *See also Commonwealth v. Davis,* 282 Pa.Superior Ct. 51, 54, 422 A.2d 671 (1980). Appellant also claims that prospective jurors should have been asked whether they believed that a police officer was capable of telling a lie under oath like any other witness. The court did ask the following questions which sufficiently dealt with the issue:

> THE COURT: If during the course of this testimony there was presented a police officer or law enforcement personnel who testified as to a certain thing, whatever it might be, and at another point in the trial a civilian testified to the same thing, but in an opposite way from what the police officer did, would you believe the police officer's testimony just because he is a police officer? (no response)

> THE COURT: Now I reverse that question: Is there any among you that wouldn't believe a police officer's testimony just because he or she is a police officer?

N.T., January 10, 1984, 34–35. Finally, appellant claims that the court erred by not allowing him to ask prospective jurors whether they were so offended by the gruesome nature of the accusations against him that they could not give him a fair trial. The court's general questions and instructions during *voir dire* were adequate to expose possible prejudice or bias. Consider the following:

> THE COURT: I am now going to review [certain basic principles of criminal law]. [Y]ou now understand that the jury that is chosen ... has the sole responsibility of determining the facts in this case from the evidence and that the jury so chosen must take the law as the Court gives it to the jury and in the instructions to the jury. The jury must then apply the law as the Court gives it to the facts as the jury finds it, and then determine the case.

In other words, ... a juror cannot say that he or she doesn't like the law, or disagrees with the law. But a juror is bound by his or her oath to accept the law from the Court and apply it to the evidence.

Having told you that, I pose the following question to all of you: Is there any among you that would not follow that portion of the law as I have just given it to you? If so, please raise your hand.

THE CRIER: No response, your Honor.

THE COURT: Very good. Now, you will recall I spoke of principles of law also. For example, there is a presumption of the defendant's innocence; that the burden rests on the Commonwealth to prove the defendant's guilt beyond a reasonable doubt; that no inference of guilt can be drawn from the circumstance, if it should occur, that the defendant does not take the stand and testify in his own behalf or present testimony in his own behalf; ... and that in determin[ing] the guilt or the innocence of this defendant the jury must not be influenced by any sympathy for him or by any bias or prejudice against him.

Having given you these basic tenets of the law, I now pose the following question: Is there any among you that would not follow these principles, as well as any others I may give you during the course of this trial? If so, please raise your hand.

THE CRIER: No response, your Honor.

THE COURT: Do any of you know any reason why, if you're selected as a juror in this case, you could not give both this defendant and the Commonwealth a fair and impartial trial? If so, please raise your hand.

THE CRIER: No response.

N.T., January 10, 1984, 28–35. The scope of *voir dire* examination rests with the sound discretion of the trial judge. *Commonwealth v. Drew*, 500 Pa. 585, 590, 459 A.2d 318 (1983). Absent a gross abuse of discretion, a reviewing court will not reverse the trial court's ruling. *Commonwealth v. Mayo*, 272 Pa.Super. 115, 120, 414 A.2d 696 (1979).

The lower court did not grossly abuse its discretion by disallowing defendant's proposed questions. While the *voir dire* questions asked by the court did not specifically address the question posed by defendant, we find that they were sufficient to secure a competent, fair, impartial and unprejudiced jury.

Appellant was sentenced to life imprisonment pursuant to the Mandatory Sentencing Act, 42 Pa.C.S.A. § 9715 (hereinafter "the Act").[2] The Act mandates a sentence of life imprisonment if the court determines that a defendant, who has been convicted of third degree murder, has previously been convicted of murder or voluntary manslaughter. The applicability of the Act is determined at sentencing. If a defendant contests the accuracy of his criminal record, he has a right to a hearing and the court may impose a life sentence only if it is convinced, by a preponderance of the evidence, of the record of previous conviction. Both the Commonwealth and the defendant may present evidence at that hearing. Appellant challenges the constitutionality of the Act on numerous grounds. Section 9715 provides, in pertinent part:

§ 9715. Life imprisonment for homicide.

(a) Mandatory life imprisonment.

[A]ny person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

(b) Proof at sentencing.

Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing.

---

**2.** Act of March 8, 1982, P.L. 169, No. 54, § 3. As amended June 15, 1982, P.L. 512, No. 141, § 5.

The applicability of the section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section.

(c) Authority of court in sentencing.

There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place such offender on probation or to suspend sentence. Nothing in this section shall prevent the sentencing court from imposing a sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing shall not supersede the mandatory sentences provided in this section.

(d) Appeal by Commonwealth.

If a sentencing court refuses to apply this section where applicable, the Commonwealth shall have the right to appellate review of the action of the sentencing court. The appellate court shall vacate the sentence and remand the case to the sentencing court for imposition of a sentence in accordance with this section if it finds that the sentence was imposed in violation of this section.

 Appellant first contends that the Mandatory Sentencing Act is inapplicable under the circumstances of this case because appellant, who was intoxicated as a result of ingestion of a controlled substance when he committed this crime, was not the intended "object" or "mischief" to be attacked by the passage of Section 9715. Appellant cites

the Statutory Construction Act, 1 Pa.C.S.A. § 1921(c), for the proposition that when the words of a statute are not explicit the court must seek to ascertain and effectuate the intention of the General Assembly. However, appellant does not show us how the words of the applicable statute are not explicit nor does our reading of the statute reveal any ambiguity. "[A]ny person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter ... shall be sentenced to life imprisonment ..." 42 Pa.C. S.A. § 9715(a).[3] We find this statutory language to be explicit and, therefore, we are compelled to apply it as written. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b).

■ Appellant posits several due process arguments in support of his constitutionality claim. He argues that by failing to receive pretrial notice from the Commonwealth that it intended to proceed under the Act, he was tried for an offense different in kind and character than that specifically charged in the indictment or information. Just as the Supreme Court in *Commonwealth v. Wright*, 508 Pa. 25, 494 A.2d 354 (1985), *cert. granted, McMillan v. Pennsylvania*, — U.S. —, 106 S.Ct. 58, 88 L.Ed.2d 47 (1985), in the context of 42 Pa.C.S.A. § 9712 (sentences for offenses committed with firearms), found that visible possession of a firearm was not an element of the underlying crime, so too, the fact that a defendant has an existing homicide conviction is not an element of his conviction for third degree murder. Therefore, he does not have the right to notice before trial that the Commonwealth intends to request sentencing on that basis; nor is he, in essence, being tried for an offense different from that with which he was charged. *See also Commonwealth v. Cofoni*, 349 Pa.Super. 407, 503 A.2d 431 (1986) (Notice provision under section

3. Appellant does not dispute that he had been previously convicted of second degree murder.

9712, 42 Pa.C.S.A., is not unconstitutional.). The notice provision in section 9715 is identical to that found in section 9712. Thus, the notice requirement of section 9715 does not violate appellant's due process right to pretrial notice of the offense with which he is charged or its elements.

Appellant asserts that the Act is unconstitutional on its face and as applied to the defendant in this case in that, at sentencing, it only requires the prosecutor to show "by a preponderance of the evidence" that the defendant had been convicted of a prior homicide. He claims that the Commonwealth should be required to prove this sentencing factor by using the standard of proof "beyond a reasonable doubt".

This is the first time we have addressed this claim with respect to section 9715. However, our Supreme Court has squarely faced it in terms of section 9712, 42 Pa.C.S.A., sentences for offenses committed with firearms, in *Commonwealth v. Wright, supra,* and in terms of section 9714, 42 Pa.C.S.A., sentences for second and subsequent offenses, in *Commonwealth v. Allen,* 508 Pa. 114, 494 A.2d 1067 (1985). Each of these mandatory sentencing sections provide that the sentencing court shall determine, by a preponderance of the evidence, whether the factors of that section have been proven by a preponderance of the evidence and should be applied to the case at hand.

In both *Wright* and *Allen,* our Supreme Court rejected the notion that due process required a higher standard of proof than a preponderance of the evidence in mandatory sentencing proceedings. Following the standard established by the United States Supreme Court, *citing Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982); *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); and *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), our Supreme Court indicated that in assessing the constitutionality of the preponderance standard "we must weigh the liberty interest of the defendant against the Commonwealth's interest in imposing a mandatory sentence and determine how the risk of error should be distributed

between these two parties in the sentencing proceeding." *Commonwealth v. Allen, supra,* 508 Pa. at 120, 494 A.2d at 1071; *Commonwealth v. Wright, supra,* 508 Pa. at 39, 494 A.2d at 361.

The liberty interest of a convicted defendant is greatly diminished as compared to one who merely stands accused. However, the Commonwealth's interest in protecting the public and punishing violent repeat offenders is at least as great as the convicted defendant's interest in leniency. *See Commonwealth v. Allen, supra.* Moreover, the risk of error is minimal under section 9715. The proof of prior conviction is a simple historical fact which may be ascertained through official documents. The conclusion we reach herein is supported by similar holdings reached by the federal courts and our sister states. As the court noted in *Allen:*

> [T]he federal "dangerous special offender" statute, 18 U.S.C. § 3575, which also requires proof of prior convictions by a preponderance of the evidence, has been uniformly upheld by the federal courts. *See United States v. Davis,* 710 F.2d 104 (3rd Cir.1983); *United States v. Schell,* 692 F.2d 672 (10th Cir.1982); *United States v. Inendino,* 604 F.2d 458 (7th Cir.), *cert. denied* 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 190 (1979); *United States v. Williamson,* 567 F.2d 610 (4th Cir.1977); *United States v. Ilacqua,* 562 F.2d 399 (6th Cir.1977), *cert denied,* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir.1977); *United States v. Stewart,* 531 F.2d 326 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2629, 49 L.Ed.2d 376 (1976). Moreover, statutes similar to the federal statute have been held constitutional in the state courts. *See Eutsey v. State,* 383 So.2d 219 (Fla.1980); *State v. Piri,* 295 Minn. 247, 204 N.W.2d 120 (1973); *State v. Wells,* 276 N.W.2d 679 (N.D.1979); *States v. Sanders,* 35 Or.App. 503, 582 P.2d 22 (1978).

*Supra* 508 Pa. at 121, 494 A.2d at 1071. Thus, we are convinced that the preponderance standard is sufficient to

protect appellant's liberty interest as weighed against the Commonwealth's interest in imposing a mandatory sentence.

 We must now determine whether the Act, which provides that the applicability of the section shall be determined by the sentencing court, denies appellant of his constitutional right to a jury trial. This claim, too, is meritless. Appellant argues that the prior conviction for homicide is, in effect, an intrinsic element of the crime charged and, therefore, his right to jury determination of the fact is constitutionally protected. As previously discussed, the *Wright* court determined that the mandatory sentencing factors are not elements of the underlying crime. The right to trial by jury attaches only to the determination of guilt or innocence, not to be the sentencing procedure. *See Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984); *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976). Therefore, this claim must fail.

 Appellant makes a meager effort to raise an equal protection claim under the equal protection clause of the Fourteenth Amendment to the United States Constitution stating that he is being treated differently, under similar circumstances, than other persons found guilty of murder in the third degree in this Commonwealth. He argues, without supporting citation, that the court must apply the "strict scrutiny" test to his claim. To the contrary, it is now clear that the test to be applied in equal protection cases, neither implicating rights fundamental under the Pennsylvania or United States Constitutions nor involving suspect classifications, is the "rational basis" test. *Long v. 130 Market Street Gift & Novelty,* 294 Pa.Superior Ct. 383, 402, 440 A.2d 517 (1982). *See, e.g., Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). The "rational basis" test is to determine whether the classification [4] at issue here is rea-

4. There is no contention in this case that a fundamental interest is at stake such as the freedom of speech, as discussed in *American Book-*

sonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation. *Snider v. Thornburgh,* 496 Pa. 159, 168, 436 A.2d 593 (1981).

The courts of this Commonwealth have upheld various criminal statutes which impose a dissimilar penalty on different classes of offenders who cause the same harmful result. In *Commonwealth v. Hicks,* 502 Pa. 344, 466 A.2d 613 (1983), the Supreme Court held the fact that vehicular homicide, 75 Pa.C.S. § 3732, and involuntary manslaughter, 18 Pa.C.S.A. § 2504, are both classified as misdemeanors of the first degree despite the fact that there are different elements of proof for each offense, does not violate equal protection standards. In *Commonwealth v. Finnegan,* 280 Pa.Superior Ct. 584, 421 A.2d 1086 (1980), this court held sentencing disparity based upon the separate roles played by the prostitute, client and promoter bore a rational relationship to the avowed objective of eliminating this form of crime. In *Commonwealth v. Covert,* 322 Pa.Superior Ct. 192, 469 A.2d 248 (1983), this court found that disparity of treatment as to criminal liability based upon the separate roles of player and of operator or promoter of an illegal lottery bore a reasonable relationship to the objective of eliminating the crime of operating a lottery.

█ Appellant herein argues that the Act treats him differently from all other persons found guilty of murder in the third degree. This claim must fail because the legislation does not treat similarly situated persons differently. Appellant is a member of a class of persons who has been convicted of third degree murder and who also has a previous conviction for murder or voluntary manslaughter. The legislature has identified defendants who have committed two homicides as particularly dangerous to society. In an effort to deter and punish this dangerous behavior, the legislature has determined that it shall be punishable by a

*sellers Assn. Inc. v. Rendell,* 332 Pa.Superior Ct. 537, 481 A.2d 919 (1984) and *Long v. 130 Market Street Gift & Novelty, supra,* nor that a suspect classification, i.e. race or religion, is involved.

mandatory life sentence. Such a classification, for sentencing purposes, is rationally related to the legitimate purpose of protecting the general welfare and, therefore, does not violate equal protection.

Appellant asks this court to find the Act unconstitutional on the theory that it defies the separation of powers scheme under the Pennsylvania Constitution by (1) abrogating to the legislature sentencing powers vested in the judiciary and (2) by abrogating to the prosecutor the power to subjectively, and without accountability, select the cases in which he shall seek to impose the mandatory sentence.

It is the province of the legislature to determine the punishment imposable for criminal conduct. *Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114 (1959). For this reason the argument that section 9715 violates the separation of powers principle by depriving the sentencing court of discretion may be rejected. *See Commonwealth v. Wright, supra* 508 Pa. 40, 494 A.2d at 361 n. 4.

In *Commonwealth v. Cofoni, supra,* this court specifically addressed appellant's second contention. We held that the prosecutor has no discretion to apply section 9712 in a proper case. Likewise, under section 9715, where there is evidence that a defendant was previously convicted of murder or voluntary manslaughter, the prosecutor must invoke section 9715 following proper notice to the defendant. Accordingly, appellant's separation of powers challenge to this Act must fail.

The last constitutional claim asserted by appellant is that the Act unconstitutionally deprives him of due process and equal protection by limiting appellate review to the single issue of mandatory imposition of sentence. Citing section 9715(d), appellant argues that it limits the scope of appellate review. Such an interpretation is totally inaccurate. Section 9715(d) relates only to appeals brought by the Commonwealth and has no effect on the scope of appellate review in this case. Therefore, it has no effect on appellant's due process or equal protection rights.

Finally, appellant alleges that in the absence of unequivocal statutory language, his prior conviction obtained before the effective date of the Act should not have been considered by the sentencing court. The language of the Act could not be more clear or precise:

> ... Any person convicted of murder of the third degree in this Commonwealth who has previously been convicted *at any time* of murder or voluntary manslaughter ... shall be sentenced to life imprisonment ... (emphasis added)

Section 9715(a).

■■■ This case is distinguishable from *Commonwealth v. Clipper*, 303 Pa.Superior Ct. 385, 449 A.2d 741 (1982), which appellant urges is controlling. In *Clipper*, this court held that prior convictions for "shoplifting" under the Penal Code of 1929 could not be used to increase the grade for "retail theft", 18 Pa.C.S.A. § 3929, committed after the enactment of the Crimes Code of 1972, as amended. Since section 3929 was not clear on its face, the court looked to legislative intent and followed the rule of strict construction of penal statutes. 1 Pa.C.S. § 1928(b)(1). Most persuasively, the court noted that prior to the 1972 Crimes Code, there was no offense called "retail theft" and, therefore, any reference to that term could only be dated back to the enactment of that Code. In the case presently before us, not only is the statutory language clear but the crimes of murder and voluntary manslaughter, and their definitions, remained unchanged by the enactment of the mandatory sentencing act. Therefore, any reference to those terms in the Act may logically extend back before its enactment.[5]

5. Many courts have upheld the constitutionality of recidivist sentencing statutes which give credence to convictions obtained before the passage of the statute. *See e.g., Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 1259, 92 L.Ed. 1683 (1948) ("Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for earlier crimes. It is a stiffened penalty for the latest crime ..."); *Government of Virgin Islands v. Henry,* 533 F.2d 876, 878 (3d Cir.1976)

Based on the foregoing, the judgment of sentence is affirmed.

("punishment is for the new crime only, but is heavier if he is a habitual criminal ...").