J-S28015-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                :              PENNSYLVANIA
                                :
             v.                     :
                                :
                                :
RONNIE JOHNSON                 :
                                :
           Appellant           :     No. 1326 MDA 2018

Appeal from the Judgment of Sentence Entered April 26, 2018
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002195-1998

BEFORE:  BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:          **FILED: OCTOBER 16, 2019**

Ronnie Johnson appeals *pro se*[1] from the April 26, 2018 judgment of
sentence of thirty years to life imprisonment that was imposed after he was
resentenced on a 1999 conviction for first-degree murder.  We affirm in part,
vacate in part, and remand with instructions.

The conviction arose out of events that transpired on May 25, 1998,
when Appellant was seventeen years old.  Appellant and his co-defendant,
Jermaine Watkins ("Co-defendant"), entered Memorial Park in Carlisle,
Pennsylvania, in search of Robert "Rocky" Anderson.  Co-defendant
approached Anderson and they began to argue.  Appellant was carrying a .22
caliber revolver and Co-defendant had a .380 caliber semi-automatic

_____

[1] After a brief **Grazier** colloquy, Appellant chose to proceed *pro se* at the
resentencing hearing with stand-by counsel, and has continued to represent
himself on appeal. ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998);
N.T. Resentencing Hearing, 4/26/18, at 3-4.

_____

\*    Retired Senior Judge assigned to the Superior Court.

handgun. During the argument, Appellant and Co-defendant fired their weapons. Anthony Shannon Banks ("victim"), a bystander, was struck by a stray bullet and fell to the ground. Appellant approached the victim and shot him multiple times, killing him. At autopsy, a .22 caliber bullet was removed from the victim's brain.

On July 9, 1999, Appellant pled guilty to first-degree murder. In exchange for his guilty plea, the Commonwealth agreed not to seek the death penalty.[2] On the same day, he was sentenced to the mandatory sentence of life in prison without the possibility of parole ("LWOP").

After the United States Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718 (2016), Appellant received a resentencing hearing wherein he was ordered to serve thirty years to life imprisonment. Appellant filed a post-sentence motion which was denied. He filed a timely notice of appeal and was not ordered to file a concise statement of errors complained of on appeal. The resentencing court filed its opinion, and the matter is now ripe for our review.

Appellant raises the following issues on appeal, which we have reordered for ease of disposition:

> I. Did the trial court abuse its discretion by denying Appellant's post-sentencing motion despite his request to supplement

---

[2] The imposition of the death penalty on juveniles between the ages of sixteen and seventeen who had been convicted of homicide was not rendered unconstitutional until 2005. *See Roper v. Simmons*, 543 U.S. 551 (2005).

such after receipt of his sentencing transcripts to challenge the language of the sentencing statute under the void for vagueness doctrine (due process) since a life sentence has not been clearly defined under title 18 Pa.C.S. § 1102?

II. Did the trial court abuse its discretion by failing to hold a hearing on Appellant's writ of *habeas corpus ad subjiciendum* being as though it took over 240 days after the U.S. middle district court of Pennsylvania granted his federal *habeas corpus* ordering a prompt resentencing hearing when all similarly situated litigants was given 120/180 days of unconditional release was ordered?

III. Did trial court abuse its discretion by imposing a sentence based on the crime alone despite underdeveloped sense of responsibility of a minor/child?

IV. Did the trial court [err] by imposing a [thirty] to life sentence under title 18 Pa.C.S. § 1102 in violation of the separation of powers doctrine when no legislation exists to confer a minimum term?

V. Did the trial court abuse its discretion when it failed to identify the statute which allowed a sentence to be imposed and gave [it] jurisdiction to enforce a penalty not clearly defined by statute (legislation) ultimately depriving [it] of subject matter jurisdiction?

VI. Did the trial court [err] in denying Appellant's post-sentencing motion by utilizing title 18 Pa.C.S. § 1102.1 as guidance in violation of the equal protection clause of the U.S. Const. when a sub-class was created for sentencing via *Commonwealth v. Batts*, [163 A.3d 410 (Pa. 2017) ("*Batts II*")] when a 14 year old is given a lesser sentence than a 15 year old due to legislation?

[VII. Did the trial court commit an error by failing to issue a opinion addressing Appellant's claims within his post-sentencing motion.][3]

_____

[3] Although, included in his brief as its own argument section, we note with displeasure that Appellant failed to include this issue in his statement of questions section.

- 3 -

VIII. Did the trial court commit error by increasing Appellant's court cost[s] at a resentencing hearing which violated the double [jeopardy] clause when the penalty was more severe because transportation cost[s] are illegal?

Appellant's brief at 7, 21.

In his first claim, Appellant alleges that 42 Pa.C.S. § 9711 should be declared void for vagueness because the statute does not define "life." Appellant's brief at 15. The Commonwealth responds that this claim is waived because Appellant is raising it for the first time on appeal. Commonwealth's brief at 16. Appellant acknowledges the Commonwealth's argument, and concedes his failure to preserve this issue below, but explains that his failure to do so was the result of trial court error. The trial court denied his post-sentence motion without first ruling on his request to supplement his filing once he received the resentencing hearing transcript. Appellant alleges that he could not raise this challenge to the statutory definition of "life" without first reading the sentencing transcript. Appellant's brief at 15. We disagree.

"It is a bedrock appellate principle that 'issues not raised in the lower court are waived and cannot be raised for the first time on appeal.'" *Commonwealth v. Sanchez*, 82 A.3d 943, 978 (Pa. 2013). Notably, "if the grounds asserted in the post-sentence motion do not require a transcript, neither the briefs nor hearing nor argument on the post-sentence motion shall be delayed for transcript preparation." Pa.R.Crim.P. 720(2)(c).

While Appellant is correct that the resentencing court never issued an order responding to Appellant's request to supplement his post-sentence

- 4 -

motion upon receipt of the resentencing transcript, he has offered no explanation or legal authority in order to support his contention that the resentencing transcript was necessary in order for him to be able to properly plead his claim, such that his failure to preserve this issue should be overlooked. Importantly, Appellant's substantive analysis is purely legal. While he has included citations to the sentencing hearing transcript, such excerpts do not enhance the strength of his argument. Accordingly, since we conclude that the transcript was not necessary for Appellant to preserve this issue in his post-sentence motion, and Appellant failed to include it in his post-sentence motion, it is waived.

In his second issue, Appellant attacks the timeliness of his resentencing hearing. This issue is similarly waived due to Appellant's failure to litigate it below. A review of the record reveals that this action began when his attorney filed a petition for a writ of *habeas corpus* and amended PCRA petition on December 26, 2013. In that filing, counsel preserved Appellant's resentencing claim based on **Miller** and requested that his case be stayed pending the outcome of a petition for allowance of appeal in **Commonwealth v. Cunningham**, 81 A.3d 1 (Pa. 2013). The PCRA court granted Appellant's request for a stay. Notably, if it had not done so, Appellant's PCRA petition would have been dismissed as untimely, because **Miller** had not yet been found to apply retroactively.

In 2016, counsel filed a second amended PCRA petition, following the United States Supreme Court's decision in **Montgomery**, wherein the Court found that **Miller** should be applied retroactively. **Montgomery**, **supra** at 736-37. The PCRA court granted Appellant's second amended PCRA petition and scheduled a resentencing hearing for June 14, 2016. This initial date was continued twice by the parties while they awaited the Pennsylvania Supreme Court's decision in **Batts II**. Following the issuance of **Batts II**, the final continuance was granted after both sides agreed that they needed more time to acquire necessary witnesses for the resentencing hearing. At no time did defense counsel challenge the timeliness of the resentencing hearing, and in fact, all of the continuances were requested by the defense.

Appellant began representing himself at his resentencing hearing, with stand-by counsel. However, Appellant never challenged the speediness of his resentencing hearing either orally or in a post-sentence motion. Because there is no evidence in the record that Appellant ever challenged the delay in his resentencing hearing until he filed his appellate brief, we find this claim to be waived.

In his third issue, Appellant challenges the discretionary aspects of his sentence. Specifically, he alleges that the resentencing court improperly relied on his misconduct record in prison and the nature of the underlying crime itself, without placing enough emphasis on the fact that Appellant was young when he committed his crime, had to exist within a hostile prison

environment amongst substantially older inmates, and has since been rehabilitated. *See* Appellant's brief at 12, 20. The following principles apply to our consideration of whether review of the merits of his claim is warranted. "An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction." *Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014). In determining whether an appellant has invoked our jurisdiction, we consider four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id*.

Appellant filed both a timely post-sentence motion and a notice of appeal. However, in his motion, Appellant did not challenge the court's failure to consider mitigating factors or alleged reliance on improper facts when it fashioned his sentence. *See* Post-Sentence Motion, 3/8/18, at unnumbered 1-2. Also, a review of the resentencing transcript reveals that Appellant did not raise either of these claims at the resentencing hearing. Therefore, Appellant did not preserve this issue and his discretionary aspects of sentence claim is waived. *See*, *e.g.*, *Commonwealth v. Jones*, 858 A.2d 1198, 1204

(Pa.Super. 2004) (holding that a discretionary aspects issue was waived because it was not raised at sentencing or in a post-sentence motion).

In his fourth and fifth claims, Appellant attacks the court's authority to follow **Batts II**, and resentence him under 18 Pa.C.S. § 1102.1, as an abuse of discretion, because no legislation exits to "confer a minimum term" on Appellant.[4] Appellant's brief at 14, 19. Specifically, Appellant points to the text of § 1102.1, which states that it applies only to offenders who are sentenced after June 24, 2012, as support for his argument that the legislature did not intend for it to apply retroactively. *Id*. at 19. Therefore, when the resentencing court utilized § 1102.1 as guidance, it was "legislat[ing] from the bench." *Id*. at 14. Appellant mischaracterizes the **Miller** and **Batts II** holdings in order to reach the conclusion that the resentencing court was not required to impose a minimum term of imprisonment at resentencing.

In **Batts II**, our Supreme Court interpreted **Miller** and found that, pursuant to **Commonwealth v. Batts**, 66 A.3d 286, 297 (Pa. 2013) ("**Batts**

---

[4] While Appellant also includes certain constitutional "buzz words" in his analysis, he fails to offer a coherent analysis in support of his allegations. We could find waiver on that basis. **See Commonwealth v. Perez**, 93 A.3d 829, 841 (Pa. 2014) (holding that a "failure to provide any developed argument or legal citation results in waiver of this issue"). However, because Appellant does advance similar arguments in both claims against the utilization of 42 Pa.C.S. § 1102.1 as a guideline in the absence of a legislative mandate, we decline to find waiver and will instead analyze those portions of his claims together on their merits.

*I*"), once a resentencing court evaluates the criteria identified in *Miller* and determines a life without the possibility of parole sentence is inappropriate, it must impose a "mandatory maximum sentence of life imprisonment as required by Section 1102(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing." The *Batts II* court instructed resentencing courts to look to mandatory minimum sentences set forth in § 1102.1(a) as guidance for setting a minimum sentence for a juvenile convicted of first-degree murder prior to *Miller*. Importantly, our Supreme Court explained that § 1102 was still valid when applied to juveniles who were convicted of first or second degree murder prior to June 25, 2012, since the unconstitutional part of Pennsylvania's sentencing scheme, the lack of parole eligibility pursuant to § 6137(a)(1), was severable. In doing so, it also considered the legislature's inaction in this area:

> Despite the passage of four years since we issued our decision in *Batts I*, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-*Miller*,[5] nor has it amended the pertinent provisions that were severed in *Batts I*. As we have previously stated, the General Assembly is quite able to address what it believes is a judicial misinterpretation of a statute, and its failure to do so in the years following the *Batts I* decision gives rise to the presumption that the General Assembly is in agreement with our interpretation.

---

[5] The legislature did eventually respond to *Miller* by enacting 18 Pa.C.S. § 1102.1, which provides that individuals between the ages of fifteen and seventeen convicted of first-degree murder must be sentenced to a maximum of life imprisonment and a minimum term set anywhere from thirty-five years to life. However, this statute only applies to those individuals sentenced after June 24, 2012.

*Batts II*, *supra* at 445 (internal quotation marks, citations, and footnote omitted).

Subsequent case law has relied on the holding of *Batts II* and repeatedly rejected claims that such a sentencing scheme is unconstitutional as applied to juvenile offenders convicted of murder prior to *Miller*. Although these cases have largely focused on challenges to the life maximum tail instead of the minimum range sentence, those holdings are still instructive here. *See Commonwealth v. Blount*, 207 A.3d 925 (Pa.Super. 2019); *Commonwealth v. Olds*, 192 A.3d 1188 (Pa.Super. 2018) (holding imposition of mandatory maximum sentence of life imprisonment for juvenile defendant convicted of second-degree murder prior to *Miller* was constitutional); *Commonwealth v. Seskey*, 170 A.3d 1105 (Pa.Super. 2017) (finding that the resentencing court was required to impose a mandatory maximum sentence of life imprisonment when it resentenced a juvenile defendant convicted of first-degree murder prior to *Miller*).

Based on a review of the above-precedent and statutory authority, it is clear that Appellant's argument, pertaining to the application of § 1102.1 to those sentenced after June 24, 2012 is incorrect. Just as we have previously found with regard to the maximum life tail, the resentencing court was statutorily required to start its analysis of the appropriate minimum range sentence for Appellant by looking to § 1102.1, as *Batts II* required. We also are bound to follow the mandate of *stare decisis*.

In his sixth issue, Appellant challenges the constitutionality of 18 Pa.C.S.

§ 1102.1, which the legislature enacted in response to the High Court's

decision in **Miller**.[6]  "We note that duly enacted legislation carries with it a

strong presumption of constitutionality."  **Commonwealth v. Turner**, 80

A.3d 754, 759 (Pa. 2013) (citation omitted).  "A presumption exists '[t]hat

the General Assembly does not intend to violate the Constitution of the United

States or of this Commonwealth' when promulgating legislation."

**Commonwealth v. Baker**, 78 A.3d 1044, 1050 (Pa. 2013).

> In conducting our review, we are guided by the principle that acts passed by the General Assembly are strongly presumed to be constitutional, including the manner in which they were passed. Thus, a statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution.  If there is any doubt as to whether a challenger has met this high burden, then we will resolve that doubt in favor of the statute's constitutionality.

**Commonwealth v. Neiman**, 84 A.3d 603, 611 (Pa. 2013) (internal quotation

marks and citations omitted).  Constitutional challenges present pure

questions of law; therefore, our standard of review is *de novo* and our scope

of review is plenary.  **Turner**, **supra**.

Appellant argues that § 1102.1 violates the Equal Protection Clause of

the 14th Amendment because it treats juveniles under the age of fifteen

---

[6] While Appellant was not subject to § 1102.1, as it only applies to defendants sentenced after June 24, 2012, the Court used it as a guideline.  Trial Court Opinion, 12/11/18, at 2.  Additionally, Appellant orally preserved his equal protection challenge to § 1102.1 at the resentencing hearing.  N.T. Resentencing Hearing, 4/26/18, at 34-35.  Therefore, this claim is properly before us and we proceed to review it on the merits.

differently than it treats juveniles between the ages of fifteen and eighteen when fashioning the minimum range of a sentence for the same crime. Appellant's brief at 13. This disparity in treatment on the basis of age, alone, appellant alleges, is unconstitutional because the statute fails to account for the individual circumstances of each case, such as the "horrific" nature of the offense, as required by *Miller*. *Id*. We disagree.

The statute provides, in relevant part, as follows:

Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer

**(a) First degree murder**.—A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life.

18 Pa.C.S. § 1102.1(a). When determining whether to impose a sentence of life without parole on a juvenile convicted of murder, § 1102.1 requires a court to consider and make findings on the record regarding the following individual factors:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effect of the crime on the victim and the victim's family.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

> (i) Age.
>
> (ii) Mental capacity.
>
> (iii) Maturity.
>
> (iv) The degree of criminal sophistication exhibited by the defendant.
>
> (v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.
>
> (vi) Probation or institutional reports.
>
> (vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d).

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The starting point of [an] equal

protection analysis [of a statute] is a determination of whether the State has created a classification for the unequal distribution of benefits or imposition of burdens." ***Commonwealth v. Parker White Metal Co.***, 515 A.2d 1358, 1363 (Pa. 1986). Section 1102.1 differentiates between offenders based upon their age, and other age related factors. "It is well-settled that age classifications do not implicate suspect classes, and therefore, do not trigger strict scrutiny review." ***Commonwealth v. Albert***, 758 A.2d 1149, 1152 (Pa. 2000) (citing ***Gondelman v. Commonwealth***, 554 A.2d 896, 899 (Pa. 1989)). When fundamental rights or suspect classifications are not implicated, we apply the rational basis test. ***Commonwealth v. Lark***, 504 A.2d 1291, 1298 (Pa.Super. 1986).

In applying the rational basis test, we follow a two-step analysis: "First, [a court] must determine whether the challenged statue seeks to promote any legitimate state interest or public value. If so, [the court] must next determine whether the classification adopted in the legislature is reasonably related to accomplishing that articulated state interest or interests." ***Albert***, ***supra*** at 1152. We also note that, "[i]n undertaking [our] analysis, [we are] free to hypothesize reasons the legislature might have had for the classification. If [we determine] that the classifications are genuine, [we] cannot declare the classification void even if it might question the soundness or wisdom of the distinction." ***Id***.

As noted above, § 1102.1 was created in response to the **Miller** decision, wherein the United States Supreme Court held that children must be treated differently than adults for purposes of sentencing even when they commit terrible crimes, because juveniles have "diminished culpability and greater prospects for reform," since their brains are not fully developed. **Miller**, **supra** at 469. Therefore, the mandatory penalty scheme that prevented the sentencing court from exercising its discretion to sentence a juvenile offender to anything other than life without the possibility of parole, without first considering socioscientific factors, was found to be unconstitutional. **Id**. at 474. Thus, our legislature passed § 1102.1, differentiating between offenders based on age, in order to ensure that juvenile offenders were given individualized sentences that took into consideration their unique backgrounds.

We find that the legislation serves a legitimate state interest, to ensure that society is protected from criminal offenders who commit heinous crimes, while guaranteeing that juvenile offenders are given the opportunity to reform in conformance with **Miller**'s mandate. A distinction between juveniles, under the age of eighteen and under the age of fifteen, recognizes that as juveniles age and get closer to adulthood, the starting point for assessing a degree of culpability and potential for reform must also evolve. Thus, the legislation meets the rational basis test. Based on the foregoing, we conclude that § 1102.1 does not run afoul of the United States Equal Protection Clause.

In his seventh issue, Appellant attacks the content of the resentencing court's Pa.R.A.P. 1925(a) opinion and its failure to order him to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He alleges that both issues led to a record so deficient that proper appellate review is impossible. Appellant's brief at 21. We disagree with Appellant's characterization of the record and that any Pa.R.A.P. 1925 error occurred.

Once Appellant filed a notice of appeal, the resentencing court was required to do the following:

> Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pa.R.A.P. 1925(a)(1). A plain reading of Pa.R.A.P. 1925(a)(1) reveals that the resentencing court was not required to respond individually to each of Appellant's claims in his post-sentence motion. Instead, all it was required to do was to issue "a brief opinion of the reasons for [its sentencing order]" and it did that. *Id*.; *see also* Trial Court Opinion, 12/11/18, at 1-3. Therefore, Appellant is entitled to no relief on the first portion of his claim.

Appellant also alleges that the resentencing court erred when it did not order him to file a Pa.R.A.P. 1925(b) concise statement. The relevant subsection of the rule provides that:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on

> appeal, the judge **may** enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

Pa.R.A.P. 1925(b) (emphasis added). The plain text of the rule indicates that the resentencing court had the discretion to decide if a concise statement was needed and should have only ordered Appellant to file one if it felt that the record was inadequate or that it needed Appellant to clarify which issues he intended to raise on appeal. Since the resentencing court proceeded to file its Rule 1925(a) opinion without ordering Appellant to file a Rule 1925(b) statement, it follows that the court determined that a Rule 1925(b) statement was unnecessary. Therefore, Appellant's claim fails on both accounts.

In his final issue, Appellant challenges the resentencing court's order requiring him to pay the costs of prosecution, because it violated the Double Jeopardy Clause of the United States Constitution. Appellant's brief at 17. While pointing out the incoherence of Appellant's constitutional analysis, the Commonwealth nevertheless concedes that Appellant should not have been ordered to pay the costs of his resentencing on different grounds. Commonwealth's brief at 17. We appreciate the Commonwealth's candor and agree with its assessment.

Because Appellant's claim challenges the resentencing court's authority to impose costs as part of its resentencing order, it implicates the legality of his sentence. ***Commonwealth v. Lehman***, 201 A.3d 1279, 1283 (Pa.Super. 2019). "Our standard of review over such questions is *de novo* and our scope

of review is plenary." ***Commonwealth v. White***, 193 A.3d 977, 985 (Pa.Super. 2018) (citing to ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa.Super. 2014)).

We find instructive this court's recent decision in ***Lehman***. In that case, the defendant, like Appellant, was convicted of a murder he committed when he was a juvenile and sentenced to life without the possibility of parole. After obtaining relief pursuant to ***Miller*** and ***Montgomery***, the defendant was resentenced to thirty-years to life for his first-degree murder conviction and ordered to pay the costs of prosecution, which included costs accrued during his resentencing hearing. Among other issues, on appeal the defendant challenged the resentencing court's imposition of prosecution costs for the resentencing hearing. Although we upheld the sentencing court's authority to impose the thirty-years to life sentence, we also agreed with the defendant that he should not have been charged with the costs associated with the resentencing, as that "would punish him for exercising his constitutional right to receive a sentence that comports with the Eight Amendment of the United States Constitution." ***Lehman***, ***supra*** at 1286. We remanded the case so that the defendant's costs could be recalculated. The same is true here. Appellant should not have been assessed costs which were accrued as a result of changes in the law. ***Id***. Therefore, we vacate the portion of the resentencing court's order requiring Appellant to pay the costs of his

resentencing and remand for a recalculation of his costs in conformance with our holding in **Lehman**.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judge Strassburger joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/2019